## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JESSE JACKSON,
*Individually and for Others Similarly
Situated*,

      Plaintiff,

v.

AMERICAN ELECTRONIC WARFARE
ASSOCIATES, INC.,

      Defendant.

Civil Action No. TDC-22-1456

### MEMORANDUM OPINION

Plaintiff Jesse Jackson, acting individually and on behalf of all similarly situated individuals, has filed this civil action against his former employer, American Electronic Warfare Associates, Inc. ("AEWA"), alleging that he did not receive overtime pay, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2018), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3–401 to 3–431 (LexisNexis 2016), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3–501 to 3–509. Jackson asserts the FLSA claim as a collective action under 29 U.S.C. § 216(b) and the state law claims as a class action under Federal Rule of Civil Procedure 23. Jackson has filed a Motion for Conditional Certification and Court-Authorized Notice, which is now fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

AEWA is an aerospace and electronics defense company, headquartered in California, Maryland, that frequently performs work pursuant to government contracts.  Generally, AEWA provides staffing for projects relating to engineering, the power industry, oil and gas, and infrastructure and buildings.

From February 2015 to August 2021, Jackson worked for AEWA as an engineer and was paid on an hourly basis.  Whenever Jackson received a pay raise, he received a notice from Human Resources that listed his new increased hourly rate.  Jackson was not paid a guaranteed salary, and if he worked under 40 hours in a week, he was paid for only the hours he worked.

Jackson alleges that throughout his employment with AEWA, he regularly worked in excess of 40 hours in a week, routinely exceeding 50 hours worked in a week.  However, when Jackson worked more than 40 hours in a week, he was paid the same hourly rate for all hours worked, including for those exceeding 40 hours in a single week.  Jackson asserts that other AEWA employees worked similar hours and were also denied overtime pay.  Jackson also alleges that AEWA never paid him or other former employees the wages they were owed when their employment with AEWA concluded.

Jackson has filed this civil action on behalf of himself and those similarly situated and has alleged that based on AEWA's practice of paying only "straight time for overtime," consisting of paying employees the same hourly rate for hours worked in excess of 40 hours in a week, AEWA has violated the FLSA, MWHL, and MWPCL.  Compl. ¶ 2, ECF No. 1.

## DISCUSSION

In his Motion for Conditional Certification and Court-Authorized Notice, Jackson requests that the Court (1) conditionally certify an FLSA collective action on behalf of "All current and

former employees of [AEWA] during the past 3 years who were paid straight time for overtime"; and (2) authorize Jackson to send a notice to these individuals by mail, email, and text message ("the Notice"). Mot. at 1, ECF No. 39. In opposing the Motion, AEWA argues that the Motion should be denied because the putative class members are not similarly situated to Jackson since they do not share similar job functions or requirements. AEWA also argues that Jackson's proposed Notice is deficient in that: (1) it should state that putative class members may be required to respond to discovery requests and engage in discovery; (2) the class should cover only those employees with claims arising within three years of the date that the Notice is issued, rather than within three years of the date of certification of the collective action; and (3) it should require that putative class members read the Notice or open it before signing the opt-in form. AEWA also argues that if the Court grants the Motion, the parties should be directed to meet and confer and reach agreement on the language of the Notice or, if they are unable to do so, to submit competing notices.

## I.   Legal Standard

The FLSA generally requires that employees who work more than 40 hours in a week receive overtime pay at the rate of one and one-half times their regular pay rate. *See* 29 U.S.C. § 207(a). If an employer violates these rules, employees may sue their employers as individuals or, if they choose, in a collective action on behalf of themselves and "similarly situated" employees. 29 U.S.C. § 216(b); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011). If employees choose to pursue a collective action, they may seek court-approved notice to inform similarly situated employees that they may join the litigation. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing the parallel collective action provision under the Age Discrimination in Employment Act).

The collective action provision serves several purposes.  First, collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.*  Second, collective actions allow the courts efficiently to resolve common issues in one proceeding.  See *id.*  Third, FLSA collective actions promote enforcement of the law by empowering employees to "join in their litigation so that no one of them need stand alone in doing something likely to incur the displeasure of an employer."  *See Pentland v. Dravo Corp.*, 152 F.2d 851, 853 (3d Cir. 1945).

Although the United States Court of Appeals for the Fourth Circuit has not provided specific guidance on how to address a motion for conditional certification of an FLSA collective action, decisions from the majority of other United States Courts of Appeals have identified, and judges of this District generally apply, a two-step process to test the sufficiency of the purported class:  (1) a pre-discovery determination that the purported class is similarly situated enough to disseminate a notice (the "notice stage"); and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated.  *See, e.g., Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85–86 (3d Cir. 2017); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001);  *Randolph v. PowerComm Constr., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010).  *But see Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436–37, 440–41 (5th Cir. 2021) (rejecting the majority approach).  At the notice stage, courts applying this process make a threshold determination whether the class is similarly situated based on "substantial allegations" in the pleadings and any submitted affidavits.  *See Thiessen,* 267 F.3d at 1102; *Hipp*, 252 F.3d at 1218–19.  Then, once

4

discovery is largely completed, such courts perform a more stringent inquiry into whether the class is indeed similarly situated. *See Thiessen*, 267 F.3d at 1102–03.

Because the record is sparse at the notice stage, courts often apply "a fairly lenient standard." *Id.* at 1103, 1105; *Hipp*, 252 F.3d at 1218 (noting that courts use a "fairly lenient standard" that "typically results in 'conditional certification'" at the notice stage); *Randolph,* 7 F. Supp. 3d at 575–76. Although vague allegations with meager factual support are generally insufficient to certify a class, proponents of conditional class certification need not conclusively demonstrate that a class of similarly situated plaintiffs exists. *See Randolph*, 7 F. Supp. 3d at 576; *Syrja,* 756 F. Supp. 2d at 686 (requiring "relatively modest" evidence that the putative class members are similarly situated).

The two-step process is appropriate because a modest inquiry into the propriety of conditional class certification before issuing court-approved notice is consistent with the purposes of the FLSA collective action provision. Certainly, some threshold inquiry before issuing notice to potential class members is appropriate to ensure that notice is not subject to misuse and is "timely, accurate, and informative." *See Hoffman–La Roche,* 493 U.S. at 171–72. It is equally important, however, that the inquiry occur under a lenient standard to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer. *See id.* at 170; *Pentland,* 152 F.2d at 853.

Finally, because all employees who join an FLSA collective action, unlike a class action under Rule 23, must affirmatively opt into the litigation as plaintiffs, *see Simmons,* 634 F.3d at 758, it would be unfair to impose an initial barrier significantly more stringent than the one

5

imposed on ordinary plaintiffs seeking to join a litigation under Rule 20. For these reasons, the Court applies the two-step process and the lenient standard at the notice stage.

## II. Conditional Certification

To establish that class members are similarly situated for purposes of collective action certification, plaintiffs must provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen,* 267 F.3d at 1102 (citations omitted); *Randolph,* 7 F. Supp. 3d at 576. "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). Thus, when employees "share a similar issue of law or fact material to the disposition of their claims," "dissimilarities in other respects should not defeat collective treatment." *Scott*, 954 F.3d at 516, 522. "[T]he crux of the matter is whether Plaintiffs have made a modest factual showing that they were victims of a common policy or scheme that contravenes the FLSA." *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 826 (D. Md. 2012).

Jackson argues that this putative class of AEWA employees is similarly situated to him in that they were: (1) paid at an hourly rate; (2) not guaranteed a set salary and were instead paid only for hours actually worked; (3) paid the same hourly rate for all hours including overtime hours; and (4) regularly scheduled to work in excess of 40 hours a week. Jackson has submitted several exhibits providing factual support for his allegations, including letters detailing his hourly rate in various years; invoices to AEWA clients listing overtime hours worked by Jackson; pay records showing that Jackson was not paid at the overtime rate for hours exceeding 40 hours per week in July 2019, August 2019, October 2020, May 2021, and June 2021; a declaration in which

Jackson asserts that from his work at AEWA he was aware that other AEWA employees were subject to a "straight time for overtime pay policy," Jackson Decl. ¶ 16, Mot. Ex. 4, ECF No. 38-4; and documentation showing a list of AEWA employees who were paid "straight time for overtime," Corrected AEWA List of Straight Time Employees, Mot. Ex. 1, ECF No. 40.

Upon consideration of the available facts, the Court finds that Jackson has offered sufficient evidence to demonstrate that the members of the proposed class are similarly situated for purposes of the collective action under the lenient standard at this stage. First, the declaration and exhibits support Jackson's assertion that he was paid a flat hourly rate, regardless of whether he worked more than or less than 40 hours per week. For example, an earnings report dated July 15, 2019 shows that when Jackson worked 53 hours in a two-week period, which was fewer than 40 hours per week, he was paid only for the hours he worked. Further, the records show that Jackson was paid his regularly hourly rate, with no premium, for hours exceeding 40 hours week, including for a two-week pay period ending on August 30, 2019, during which Jackson worked 104 hours but was paid the same hourly rate of $38.62 for all of his hours. Thus, Jackson has fairly alleged that he received only "straight time for overtime."

Second, Jackson's exhibits support his assertion that AEWA had a widespread practice of paying "straight time for overtime." In fact, AEWA's internal payroll records include a standard category for "Straight-time Overtime" hours, which were compensated at the same rate as regular hours. *See, e.g.*, 6/30/21 Payroll Record at 1, Mot. Ex. 9, ECF No. 38-9. Moreover, in response to Jackson's discovery requests, AEWA provided a list of over 200 employees who were paid "straight time for overtime." Over half of those employees were paid "straight time for overtime" even though AEWA classified their positions as non-exempt for purposes of the FLSA, providing further evidence of a company-wide policy of "straight time for overtime."

7

Finally, in his declaration, Jackson has asserted that he had daily interactions and conversations with other AEWA workers in different positions, including engineers, supervisors, consultants, operators, programmers, office and administrative staff, and human resources staff. Based on these interactions and conversations, his experience and observations from his time at AEWA, and his familiarity with AEWA's pay practices, Jackson determined that other AEWA workers were also paid hourly, worked over 40 hours per week, and were nevertheless paid at their regular hourly rate for overtime hours, and has thus concluded that AEWA had a uniform "straight time for overtime" policy. Jackson Decl. ¶ 16. These interactions, as well as his own experience of working for different AEWA clients and under different supervisors, also revealed that the "straight time for overtime" policy applies to employees working for different clients and under different supervisors. Jackson also notes that he has had conversations with fellow hourly AEWA workers who have questioned the "straight time for overtime" policy, which demonstrates widespread awareness of the policy. Thus, by showing that a large number of fellow AEWA employees are subject to the same "straight time for overtime" policy, Jackson has made the requisite showing of "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen,* 267 F.3d at 1102.

In its memorandum in opposition to the Motion, AEWA argues that conditional certification requires similarity among class members not only in pay provisions, but also in job requirements. AEWA has identified no persuasive authority establishing such a rule. Rather, in *Bouaphakeo,* the court upheld the certification of a class of workers asserting that the company did not properly pay them for time spent donning and doffing protective equipment clothing even though there were "factual differences between plaintiffs," including differences in the protective equipment and clothing worn by employees in certain positions, in "the individual routines of

8

employees," and in "duties and management among departments," because there was a "specific company policy" relating to payment for such time "that applied to all class members." *Id.* at 794, 797. Likewise, in *Scott*, the court reversed a district court determination that Chipotle "Apprentices" were not similarly situated based on an analysis that relied significantly on "disparities in job duties." *Scott*, 954 F.3d at 520–21. The court stated that differences in the actual job duties of the Apprentices "will not prove fatal to the 'similarly situated' analysis . . . [i]f named plaintiffs and opt-in plaintiffs are similar in some respects material to the disposition of their claims." *Id.* at 521–22.

Although AEWA cites several unpublished district court cases in which similarity of job requirements and functions were arguably considered in determining that the putative class members were similarly situated, none concluded that similarity of job requirements is, as claimed by AEWA, "essential to the identification and definition of the class." Opp'n at 3, ECF No. 41. *See Brown v. Energy Servs. Grp. Int'l, Inc.*, No. 21-611, 2021 WL 5889707, at *1, *3 (E.D. Va. Dec. 13, 2021) (without discussing similarities or differences among the class members' job requirements, granting conditional certification of a class of power plant employees who were not paid at the overtime premium rate for overtime work because the uniform pay policy established a "common legal thread" among the employees "without consideration of facts unique or particularized to each class member"); *Mendoza v. Baird Drywall & Acoustic, Inc.*, No. 19-882, 2021 WL 2435873, at *1–2, *4–5 (W.D. Va. June 15, 2021) (in granting conditional certification of a class of laborers based on a uniform policy of not paying an overtime premium rate, noting that the putative class members shared the same job duties, were subject to the dominant control of the company and its foreman, and worked similar hours); *Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (granting conditional

certification of a class of similarly situated loan officers "when they 'raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from . . . similar job requirements and pay provisions'") (quoting *Montoya v. S.C.C.P.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at \*2 (D. Md. Feb. 26, 2008)). In *Robinson*, the court specifically stated that "plaintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay." *Id.* at \*3. Notably, AEWA has identified no case in which conditional certification of a collective action was denied on the grounds that members of the putative class did not have sufficiently similar job requirements when they were the victims of a common policy or scheme contravening the FLSA.

As discussed above, at the conditional certification stage, all that is required is "a modest factual showing that they were victims of a common policy or scheme that contravenes the FLSA." *Essame*, 847 F. Supp. 2d at 826. Where Jackson has made more than a modest showing that numerous AEWA employees were subjected to a common pay policy of being paid "straight time for overtime," and that this policy applied even for employees working under different supervisors and for different clients, the Court finds that the requisite showing has been made that these employees were "together the victims of a single decision, policy, or plan," *Thiessen*, 267 F.3d at 1102, and that they are "similar in some respects material to the disposition of their claims," *Scott*, 954 F.3d at 522. The Court will therefore grant conditional certification. *See Randolph*, 7 F. Supp. 3d at 576 (conditionally certifying an FLSA collective action based on evidence of a uniform company policy of not paying overtime and rejecting arguments that factual variations among the circumstances of individual workers precluded certification).

10

**III.    Notice**

AEWA further argues that even if the Court grants conditional certification, it should not approve Jackson's proposed Notice because it is deficient in that: (1) it should state that putative class members may be required to respond to discovery requests and engage in discovery; (2) the class should cover only those employees with claims arising within three years of the date the Notice is issued, rather than within three years of the date of certification of the collective action; and (3) it should require that putative class members read the Notice or open it before signing the opt-in form.

An FLSA collective action notice must "provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *See Hoffman-LaRoche*, 493 U.S. at 170 (discussing the parallel collective action provision under the Age Discrimination in Employment Act). In crafting a notice to serve these purposes, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006)).

As to AEWA's first proposed change, Jackson states in his reply brief that he is not opposed to adding the following language to Section 5 of the Notice: "If you decide to join this lawsuit, you may be required to answer written questions under oath, provide documents related to the lawsuit, testify at an oral deposition under oath, and/or testify at trial." Reply at 6, ECF No. 42. As other courts have found, the addition of text in a Notice informing prospective members "of the possibility that they will be required to participate in discovery and testify at trial" is "routinely accepted." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011). Because this proposed addition addresses AEWA's requested change, the Court will require the

11

Notice to include this language, but it will direct that it be added to Section 4 of the Notice, which explains the effect of making a claim, rather than to Section 5, which explains that retaliation for joining the lawsuit is prohibited.

AEWA also argues that the Notice should state that claims may cover conduct dating back three years before the date that the Notice is sent out, rather than three years before the date that conditional certification is granted, because "there is no tolling of a statute of limitations for the putative class members' claim." Opp'n at 6. Where Jackson has alleged in the Complaint that AEWA's failure to pay overtime was a willful violation of the FLSA, the statute of limitations is three years. *See* 29 U.S.C. § 255(a). In an FLSA collective action, an individual claimant's cause of action is deemed to have commenced when the claimant has opted into the FLSA collective action by filing written consent. 29 U.S.C. § 256(b). Accordingly, the Court finds that the Notice should be amended to inform potential class members that they may recover damages under the FLSA for the time period "within three years of the date that they file written consent to join the collective action" and will direct Jackson to amend Sections 1 and 2 of the Notice accordingly.

As for AEWA's final specific proposed change, the Court finds that adding language to the Notice that putative class members must read the Notice or open it before signing the opt-in form is unnecessary. Generally, when individuals sign a document, they are presumed to have read and understood the document. *See, e.g.*, *Windesheim v. Larocca*, 116 A.3d 954, 963 (Md. 2015). Accordingly, the Court will deny AEWA's request to add this language to the Notice.

Finally, AEWA also argues that the Court should require the parties to meet and confer in order to reach an agreement on a mutually acceptable Notice to be submitted to the Court, or to submit competing Notices if they are unable to do so. Having reviewed the proposed Notice and addressed the specific objections, the Court finds no need for this additional step. The purpose of

a Notice is to provide "accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *See Hoffman-LaRoche*, 493 U.S. at 170. The proposed Notice, with the edits to be made, accomplishes this purpose. Moreover, where the claims of prospective plaintiffs are subject to a three-year statute of limitations period and are not commenced until they opt-in to the collective action, further delay in the distribution of the Notice will likely disadvantage certain prospective plaintiffs by reducing their potential recovery. The Court will therefore decline AEWA's request for additional negotiation relating to the Notice, will approve the Notice subject to the changes already discussed, and will authorize its distribution.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice will be GRANTED, and the Notice, as amended, will be sent to all putative class members other than Jackson. A separate Order shall issue.

Date:   August 10, 2023

THEODORE D. CHUANG
United States District Judge

13