## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JESSE JACKSON,
*Individually and for Others Similarly Situated,*

      Plaintiff,

  v.

AMERICAN ELECTRONIC WARFARE
ASSOCIATES, INC.,

      Defendant.

Civil Action No. TDC-22-1456

## MEMORANDUM OPINION

Plaintiff Jesse Jackson, acting individually and on behalf of similarly situated individuals, has filed this civil action against his former employer, American Electronic Warfare Associates, Inc. ("AEWA"), in which he alleges that he did not receive overtime pay, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2018), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3–415(a), 3–420(a) (West 2016), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3–505(a). Jackson asserts the FLSA claim as a collective action under 29 U.S.C. § 216(b) and the Maryland state law claims as a class action under Federal Rule of Civil Procedure 23. Jackson has now filed a Motion for Class Certification of the Maryland state law claims, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Prior factual background is set forth in the Court's August 10, 2023 Memorandum Opinion granting conditional certification of an FLSA collective action in this case, which is incorporated by reference. *Jackson v. Am. Elec. Warfare Assocs., Inc.*, No. TDC-22-1456, 2023 WL 5154518 (D. Md. Aug. 10, 2023) ("*Jackson I*"). The specific factual allegations and procedural history relevant to the present Motion are set forth below.

AEWA is an aerospace and electronics defense company, headquartered in California, Maryland, that frequently performs work pursuant to government contracts. Jackson's Complaint alleges that from February 2015 to August 2021, Jackson worked for AEWA as an engineer and was paid on an hourly basis. Jackson was not paid a guaranteed salary, and if he worked under 40 hours in a week, he was paid for only the hours he worked. Jackson alleges that throughout his employment with AEWA, he regularly worked in excess of 40 hours in a week, routinely exceeding 50 hours worked in a week. However, when Jackson worked more than 40 hours in a week, he was paid the same hourly rate for all hours worked, including for those exceeding 40 hours in a single week. Jackson also alleges that AEWA never paid him or other former employees the wages they were owed when their employment with AEWA concluded.

From at least June 14, 2019 forward, AEWA has had an acknowledged policy of paying "straight time for overtime" to employees who fall within one of the identified categories of employees exempt from the requirements of the FLSA as set forth in 29 U.S.C. § 213(a). Charles Jeffries, the President of AEWA, testified in a deposition that "[e]xempt people get paid straight time" for overtime, while "[n]on-exempt people get paid time and a half." Jeffries Dep. at 30, Mot. Class Certification ("MCC") Ex. 1, ECF No. 66-2. Jeffries also testified that Jackson was among the group of AEWA employees classified as "exempt" and thus paid overtime "at the

2

hourly rate." *Id.* at 59. Jeffries acknowledged that Jackson's pay, like that of the other exempt employees, varied based on the number of hours worked each week, including for those employees exceeding 40 hours in a single week.

In its internal records, AEWA designated overtime hours worked by "Exempt employees" paid "Straight-time Overtime" as "O1" hours. AEWA Timesheet Manual Excerpt at 4, MCC Ex. 10, ECF No. 66-11. AEWA has produced "a list of all employees, classified as Exempt, who were paid straight time for overtime from July 2019" to April 2023 and were designated as having worked "O1" hours. *See* AEWA 2d Am. Ans. to Interrogatories at 3-4, MCC Ex. 15, ECF No. 66-16; AEWA 3d Class List at 2-4, MCC Ex. 8, ECF No. 66-9. That list contains over 110 current and former AEWA employees with a current or last known address in Maryland. Jodi Pilkerton, the Senior Vice President and Chief Administrative Officer of AEWA who oversees human resources, has stated that she compiled or helped to compile the list, that the list was generated using AEWA's internal software, and that it includes only workers like Jackson "who were paid straight time for overtime." Pilkerton Dep. at 20, MCC Ex. 13, ECF No. 66-14.

AEWA employed Jackson from February 2, 2015 to September 2, 2021, when Jackson resigned. AEWA classified Jackson as an exempt employee from January 2017 forward and has produced Jackson's pay records from July 2019 through July 2022. During his employment with AEWA, Jackson "worked primarily out of Patuxent River, BLDG 2100," which is located in Maryland. AEWA 2d Am. Ans. to Interrogatories at 4. During his employment, Jackson twice received workers' compensation payments, once during a pay period in July 2019 and once during a pay period in May 2021.

## DISCUSSION

In his Motion for Class Certification, Jackson seeks certification of a class, which the Court will refer to as the "Maryland Overtime Class," consisting of the following persons:

> All current and former [AEWA] employees classified as exempt and paid straight time for overtime in Maryland from June 14, 2019 through the date this Court grants certification.

MCC at 1, ECF No. 66. In support of the Motion, Jackson asserts that the proposed class is ascertainable, and that all requirements for a class action set forth in Federal Rule of Civil Procedure 23 have been satisfied, including the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and the Rule 23(b)(3) requirements of predominance and superiority. Fed. R. Civ. P. 23(a), (b)(3). In its memorandum in opposition to the Motion ("Opposition"), AEWA argues that class certification should be denied on the grounds that the proposed class is not ascertainable; does not satisfy the Rule 23(a) requirements of commonality, typicality, and adequacy; and does not satisfy the Rule 23(b)(3) requirement of predominance.

## I.      Legal Standards

A class action allows representative parties to prosecute not only their own claims, but also the claims of other individuals which present similar issues. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). The use of a class action is primarily justified on the grounds of efficiency because it advances judicial economy to resolve common issues affecting all class members in a single action. *Id.* Because of the need to protect the rights of absent plaintiffs to assert different claims and of defendants to assert facts and defenses specific to individual class members, courts must conduct a "rigorous analysis" of whether a proposed class action meets the requirements of Rule 23 before certifying a class. *Id.* Courts have wide discretion to certify a class based on their familiarity with the issues and potential difficulties arising in class action litigation. *See, e.g.*, *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010).

4

The first of these prerequisites is that the class must exist and be "readily identifiable" or "ascertainable" by the court through "objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). If a class is ascertainable, it must then satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy. To satisfy the numerosity requirement, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Commonality requires that a class have "questions of law or fact common to the class" which are capable of classwide resolution, such that the determination of the truth or falsity of the common issue "will resolve an issue that is central to the validity of each one of the claims in one stroke." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As for typicality, the named plaintiff proposed as the class representative must be "typical" of the class in that the named plaintiff's claims and defenses "are typical of the claims or defenses of the class" so that the prosecution of the claim will "simultaneously tend to advance the interests of the absent class members." Fed. R. Civ. P. 23(a)(3); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). Finally, the named plaintiff must "fairly and adequately protect the interests of the class" without a conflict of interest with the absent class members. Fed. R. Civ. P. 23(a)(4); *Ward*, 595 F.3d at 179-80. The adequacy prerequisite also requires consideration of "the competency of class counsel." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

If the named plaintiff satisfies each of these requirements under Rule 23(a), the court must still find that the proposed class action fits into one of the categories of class actions under Rule 23(b) in order to certify the class. Here, Jackson relies on Rule 23(b)(3), under which a class action may be maintained if common questions of law or fact "predominate over any questions affecting only individual members" and if a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Although similar to Rule

23(a)'s commonality requirement, the test for predominance under Rule 23(b)(3) is "far more demanding" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The predominance and superiority requirements under Rule 23(b)(3) are designed to ensure that the class action "achieve[s] economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *Amchem Prods., Inc.*, 521 U.S. at 615).

Finally, the Court notes that a decision to certify a class is based on whether or not a putative class satisfies the Rule 23 factors, not on a preliminary assessment of the underlying merits of the claim. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

## II.    Ascertainability

The Court first addresses whether the proposed class is ascertainable. Courts have found that ascertainability is satisfied, when, like here, identifying the members of the class can be accomplished by a review of the defendant's records. *See, e.g., J.O.P. v. U.S. Dep't of Homeland Security*, 338 F.R.D. 33, 52-53 (D. Md. 2020) (rejecting the argument that ascertainability was not established because of the alleged need for individualized review to determine if someone was a member of the class, because the required information was contained in the defendant's own records). In *Jackson I*, the Court concluded that "AEWA's internal payroll records included a standard category for 'Straight-time Overtime' hours," and that in discovery, AEWA had "provided a list of over 200 employees who were paid 'straight time for overtime.'" *Jackson I*,

6

2023 WL 5154518, at *4. Drawing from its own electronic records, AEWA has produced an updated list of over 110 AEWA exempt employees in Maryland who were designated in AEWA's human resources system as having worked "O1" hours and were thus paid straight time for overtime. *See* AEWA 3d Class List at 2-4; AEWA 2d Am. Ans. to Interrogatories at 3-4. The proposed class is thus "readily identifiable" through "objective criteria." *EQT Prod. Co.*, 764 F.3d at 358.

AEWA argues that ascertainabilty is not satisfied because individualized review will be needed to determine whether the listed employees are properly classified as exempt under the FLSA, and whether they were paid on a salary basis or an hourly basis. These arguments, however, while arguably relevant to certain Rule 23(a) factors or the merits, do not relate to the issue of how difficult it would be to identify the members of the class as defined by Jackson. Furthermore, an individualized review of exempt status is not necessary because Jackson does not claim that he or any other class members were misclassified as exempt beyond AEWA's failure to pay them on a salary basis; if any were misclassified, AEWA would undisputedly be liable for failing to pay them overtime. Furthermore, where Jeffries has testified that he understood that "everybody's" pay varied each week based on the number of days or hours worked, Jeffries Dep. at 114, there is likely no need for individualized review to identify class members who were paid in the same manner as Jackson. Accordingly, the Court finds that the requirement of ascertainabilty has been satisfied.

**III.    Rule 23(a)**

Although Jackson argues that the proposed Maryland Overtime Class satisfies all four requirements of Rule 23(a), AEWA disputes the elements of commonality, typicality, and adequacy. The Court finds that all four requirements have been established. First, where Jackson has provided a list of approximately 110 potential class members derived from AEWA's own

records, the numerosity element is undisputedly met. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (stating that 74 members is "well within the range appropriate for class certification").

Second, the commonality element is satisfied. The commonality requirement can be met when there is "even a single common question" of law or fact shared by the named plaintiff and the members of the putative class that is "capable of classwide resolution" and the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350, 359. Jackson claims that there are several common questions, including whether class members were "subject to [AEWA's] common policy and practice of paying straight time for overtime," whether any violations by AEWA were willful, and whether AEWA is liable for liquidated or treble damages. Compl. ¶ 77. Here, AEWA, by arguing in the Opposition that its acknowledged policy and practice of paying exempt employees straight time for overtime was lawful under both regulations governing federal government contractors and regulations interpreting the FLSA, has effectively established commonality. Because the Court finds that the question of whether AEWA's straight time for overtime policy and practice violated Maryland state wage laws, or was instead lawful based on AEWA's government contractor status, the relevant FLSA regulations, or both, is a common question of law that is central to the validity of each claim, the commonality requirement is met. AEWA's remaining arguments relating to commonality focus more on the issue of whether individual issues overwhelm common ones and will be discussed in the Court's consideration of the predominance requirement. *See infra* part IV; *see Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (stating that in "a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3)

8

requirement that questions common to the class predominate over' other questions" (quoting *Amchem Prods., Inc.*, 521 U.S. at 609)).

Third, the typicality element is met. Typicality requires that the plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by" proof of the plaintiff's own individual claim. *Deiter*, 436 F.3d at 466-67. The claims do not have to be factually or legally identical, but the class members' claims should be fairly encompassed by those of the class representative. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). Ordinarily, denial of class certification based on a lack of typicality would stem from a variation in claims between the class representative and the putative class members that "strikes at the heart of the respective causes of action[]." *Deiter*, 436 F.3d at 467. Here, where AEWA's internal records establish that Jackson, like the other class members, was paid "straight time for overtime" pursuant to AEWA policy, his claims are typical of those of other class members. In asserting that typicality is not satisfied, AEWA relies on the fact that Jackson received workers' compensation payments on two occasions during the proposed class period, that such payments could have been deducted from Jackson's paycheck, and that they therefore provide a defense to the claim that he was not paid on a salary basis during those pay periods. However, AEWA identifies no authority for the proposition that receipt of such workers' compensation on those occasions renders Jackson's claims so atypical that it "strikes at the heart" of the Maryland state law claims. *Id.* Significantly, at present, the record shows that Jackson received workers' compensation during only two pay periods throughout his over two years of work for AEWA. Such payments have no effect on Jackson's claims relating to all of the other pay periods, or the claims of other class members, and instead likely relate primarily to a future calculation of damages owed to Jackson in the event that AEWA's straight time for overtime policy is found to be

unlawful. Thus, the limited workers' compensation payments received by Jackson do not provide a basis to find a lack of typicality. The Court therefore finds that this requirement has been established.

Fourth, the adequacy element is met as to both Jackson and proposed class counsel. Generally, under the adequacy requirement, a class representative must "fairly and adequately protect the interests of the class," which is generally demonstrated if the class representative is part of the class, has the same interest, and suffers the same injury as the other class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019) (quoting *Ward*, 595 F.3d at 179). Primarily, the adequacy inquiry under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (quoting *Amchem*, 521 U.S. at 625). For a conflict of interest to defeat adequacy, the "conflict must be fundamental." *Id.* Such a conflict does not exist where the class members "share common objectives and the same factual and legal positions" and have "the same interest in establishing the liability" of the defendants. *Id.* The adequacy requirement also requires a finding of "class counsel's competency" to represent the class. *1988 Tr. for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 524 (4th Cir. 2022). "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997).

Per AEWA's own records, Jackson is part of the proposed class in that he was classified as exempt and paid straight time for overtime in Maryland during the relevant time period. AEWA has not identified, and the Court does not find, any conflict of interest between Jackson and the class he seeks to represent, much less one that is fundamental. For the same reasons discussed above in relation to typicality, the fact that Jackson received workers' compensation during two

pay periods does not create a conflict of interest that renders him an inadequate class representative. Furthermore, AEWA's argument that class counsel are inadequate because they do not regularly litigate Maryland state law claims is unpersuasive in light of the submission demonstrating that class counsel are highly experienced at pursuing wage and hour litigation, the fact that they have adequately litigated this case through the completion of discovery, and their retention of local counsel. The Court therefore finds that the adequacy requirement has been satisfied and that, more broadly, all of the Rule 23(a) elements are established.

## IV.    Rule 23(b)

On the Rule 23(b)(3) elements, Jackson argues that common questions predominate over individual questions, and that a class action is the superior means by which to resolve this dispute. AEWA does not dispute that the superiority requirement has been met but argues that individual questions predominate over common ones.   The considerations relevant to the issues of predominance and superiority include:   (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

On superiority, which is not in dispute, the Court agrees that a class action is a superior means for resolving this dispute, in part because Jackson and 17 other named plaintiffs are already litigating this case together and have completed pre-certification discovery, and because the combination of the common legal question of whether AEWA's "straight time for overtime" pay policy is lawful, and the limited amount of damages available for any particular class member,

demonstrates that the interest in individual control of the litigation through separate actions is relatively low.

The Court also finds that predominance has been established. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (quoting 7AA Charles Allan Wright et al., Federal Practice and Procedure § 1778 (3d ed. 2005)). In *Gunnells*, the United States Court of Appeals for the Fourth Circuit found that predominance had been established where the class claims rested on a single theory—that the defendant's "mismanagement of claims contributed to the ultimate collapse" of an investment plan—and there were multiple common questions, including whether the defendant breached a contract to administer the plan, whether the plaintiffs were third-party beneficiaries of that contract, and whether the defendant otherwise owed a fiduciary duty to the plaintiffs. *Gunnells*, 348 F.3d at 428. When a "failure of proof" on a "*common* question" would "end[] the litigation," that common question "will never cause individual questions . . . to overwhelm questions common to the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

As in *Gunnells*, the claims of Jackson and the proposed class rest on a single theory:  that AEWA's acknowledged policy of paying exempt employees "straight time for overtime" violates both the FLSA and Maryland state wage laws because the relevant exemptions do not apply when the employees are paid on an hourly basis, as Jackson alleges was the case at AEWA. In turn, there are multiple common questions applicable to all claims the resolution of which could end the litigation. *See Amgen, Inc.*, 568 U.S. at 468. First, there is the legal question of whether Jackson

12

is correct that exempt employees must receive overtime pay if they are paid on an hourly basis rather than a salary basis. Second, there is the related factual question of whether AEWA's particular method of paying exempt employees constitutes pay on an hourly basis or a salary basis for purposes of determining whether employees retain exempt status. This answer to this question, in turn, requires resolution of the legal question of whether, as argued by AEWA, FLSA regulations provide that employees remain exempt if they receive a "minimum weekly-required amount paid on a salary basis" even while otherwise being paid based on their number of hours worked. *See* 29 C.F.R. § 541.604(a), (b) (2023). Third, there is the legal question, identified by AEWA as a defense to the claims, of whether AEWA's acknowledged policy and practice of paying "straight time for overtime" is lawful in light of AEWA's status as a government contractor and relevant federal regulations applicable to such contractors. Because each of these questions, if resolved in a particular way, has the potential to end the litigation, predominance is established. *See Amgen, Inc.*, 568 U.S. at 468. Although AEWA has argued that it should prevail on the present Motion because of the strength of its position on these questions, the merits of its arguments are properly engaged "as a matter of summary judgment, not class certification." *See Tyson Foods, Inc.*, 577 U.S. at 457. For purposes of resolving the Motion, AEWA's identification of questions that may reveal a "fatal similarity" among the claims of the members of the proposed class that may doom those claims actually advances, rather than undermines, Jackson's argument for predominance. *See id.*

While AEWA argues that individualized inquiries may be needed as to whether particular class members were actually paid on an hourly basis or a salary basis, such reviews are likely limited because Jeffries, the President of AEWA, has testified that "everybody's" pay varied each week based on the number of days or hours worked. Jeffries Dep. at 114. Any such reviews to

verify AEWA's pay method, as well as any individualized review needed in light of Jackson's workers' compensation payments, are akin to individualized damages determinations which are typical in a class action and do not preclude a finding that the overarching, potentially dispositive questions predominate over individual issues. *See Gunnells*, 348 F.3d at 429 ("The possibility that individualized inquiry into Plaintiffs' damages claims will be required does not defeat the class action because common issues nevertheless predominate."). For these reasons, the Court concludes that the predominance requirement is satisfied at this stage and will certify the Maryland Overtime Class as a class action under Rule 23(b)(3).

## CONCLUSION

For the foregoing reasons, Jackson's Motion for Class Certification will be GRANTED. A separate Order shall issue.

Date:  February 12, 2024

THEODORE D. CHUANG
United States District Judge

14