**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JESSE JACKSON, Individually and for Others Similarly Situated,** | § § § § | **Case No. 8:22-CV-01456-TDC** |
| **Plaintiffs,** | § § | **Jury Trial Demanded** |
| **v.** | § § | **Rule 23 Class Action** **FLSA Collective Action** |
| **AMERICAN ELECTRONIC WARFARE ASSOCIATES, INC.,** | § § § | |
| **Defendant.** | § § § | |

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT**

---

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew Dunlap**
TX Bar No. 24078444
**Alyssa J. White**
TX Bar No. 24073014
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza Ste 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Nicholas A. Migliaccio**
Maryland Federal Bar No. 29077
Migliaccio & Rathod LLP
412 H St. NE Ste 302
Washington D.C. 20002
202-470-3520
nmigliaccio@classlawdc.com

**Table of Contents**

1.  Introduction .................................................................................................................... 1

2.  Summary of Facts and Procedural History ..................................................................... 2

3.  Notice of Settlement, Response of Class Members, and the Opt-in Process ................. 3

4.  Argument & Authorities ................................................................................................ 4

    A.  The Best Practicable Notice was Provided to the Class members ............................ 4

    B.  The Settlement Warrants Final Approval. ............................................................... 6

        1.  The Proposed Settlement is Fair. ....................................................................... 6

            i.  Posture of the Case ........................................................................................ 7

            ii.  Extent of Discovery ...................................................................................... 8

            iii.  Circumstances Surrounding the Negotiations ............................................. 9

            iv.  Experience of Counsel ................................................................................ 9

        2.  The Proposed Settlement is Adequate. ............................................................. 10

            i.  Strength of Plaintiff's Case on the Merits; Difficulties of Proof and Defenses ........ 10

            ii.  Duration and Expense of Additional Litigation ......................................... 11

            iii.  Solvency of Defendant and Likelihood of Recovery ................................. 11

            iv.  Degree of Opposition to the Settlement .................................................... 12

        3.  The Proposed Settlement is Reasonable. .......................................................... 12

    C.  The Court Should Finally Approve the Parties' FLSA Settlement .......................... 13

        1.  A Bona Fide Dispute Existed. .......................................................................... 13

        2.  The Settlement is Fair and Reasonable. ........................................................... 14

    D.  The Requested Attorneys' Fees, Costs, and Service Award Should Be Finally Approved. 15

    E.  The Settlement Administrator's Costs Should be Finally Approved ....................... 19

5.  Conclusion ................................................................................................................... 20

1. **INTRODUCTION**

Plaintiff Jesse Jackson ("Jackson") hereby moves for final approval of the Class and Collective Action Settlement Agreement (the "Settlement Agreement," ECF No. 156). The Settlement Agreement resolves all of the claims in this action on a class- and collective-wide basis. Jackson moves for an Order:

(1) Granting final approval of the Settlement Agreement;

(2) Finally certifying the Collective and Class for settlement purposes;

(3) Finally appointing and approving Plaintiff Jackson as Class representative;

(4) Finally appointing and approving Josephson Dunlap LLC, Brucker Burch PLLC, and Migliaccio & Rathod LLP as Class Counsel;

(5) Finally approving the requested attorneys' fees and costs as described in the Settlement Agreement;

(6) Finally approving the requested service award to Plaintiff as described in the Settlement Agreement;

(7) Finally approving the Settlement Administration costs;

(8) Finally approving the release of claims as set forth in the Settlement Agreement; and

(9) Dismissing this lawsuit and Jackson's claims with prejudice.

Jackson brought this class and collective action on behalf of himself and other current and former non-exempt American Electronic Warfare Associates, Inc. ("Defendant" or "AMEWAS") employees who worked for AMEWAS between June 14, 2019 and December 31, 2022 and were paid their straight-time rates of pay for overtime hours worked (or, "straight time for overtime"). Jackson alleged AMEWAS's straight time for overtime policy deprived him and similarly situated workers of overtime at the proper premium rate, in violation of the Fair Labor Standards Act

1

("FLSA"), the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment and Collection Law ("MWPCL").

The Parties have settled the claims asserted herein, and the Court preliminarily approved of the Settlement on February 11, 2026. ECF No. 158. The Settlement includes 119 Class and Collective Members (collectively referred to as "Class Members"). Ex. 1, Josephson Decl. at ¶ 35; Ex. 2, Settlement Administrator Decl., at ¶¶ 5, 7. Notice was disseminated on March 13, 2026. Ex. 1, Josephson Decl. at ¶ 31; Ex. 2, Settlement Administrator Decl., at ¶ 6. Of the Notice Packets mailed, 7 were returned as undeliverable. Ex. 1, Josephson Decl. at ¶ 33; Ex. 2, Settlement Administrator Decl., at ¶ 6. Each of those notices were traced using public records searches and re-mailed. *Id.* By the close of the Notice Period, zero notices remained undelivered. *Id.*

The reaction to this Settlement has been overwhelmingly positive— the deadline for Class Members to exclude themselves from the Settlement was April 27, 2026. Ex. 1 at ¶ 34; Ex. 2 at ¶ 7. To date, no Class Members have objected to the Settlement, and only one Class Member chose to exclude themselves from the Settlement. Ex. 1 at ¶ 35; Ex. 2 at ¶ 7. Given the Class Members' excellent recoveries, the positive response of the Class, and that the Settlement will provide guaranteed monetary payment, Class Counsel respectfully request the Court finally approve this Settlement.

## 2.  SUMMARY OF FACTS AND PROCEDURAL HISTORY

On June 14, 2022, Plaintiff filed this hybrid action asserting a collective claim for unpaid wages and overtime under the FLSA, as well as a Rule 23 class claim under the MWHL and MWPCL. On February 24, 2023, Plaintiff sought to conditionally certify a class for the FLSA collective action. ECF No. 37. On August 10, 2023, this Court granted Plaintiff's Motion and authorized notice to the members of the proposed collective. ECF No. 53. On November 3, 2023, Plaintiff filed his motion seeking to certify the Maryland Class under Fed. R. Civ. P. 23. ECF No.

2

66. On February 12, 2024, the Court granted Plaintiff's Motion and authorized notice to all members of the Maryland Class. ECF No. 72. On December 13, 2024, Defendant filed its Motion for Summary Judgment. ECF No. 110. On January 21, 2025, Plaintiff filed its Response and Cross-Motion for Summary Judgment. ECF No. 114. On June 9, 2025, the Court denied both motions for summary judgment. ECF No. 132. Subsequent thereto, the Parties attended mediation and eventually resolved this case.

Prior to the mediations, the Parties had exchanged sufficient information and data through extensive formal and informal discovery concerning the wages and hours worked by the Settlement Class to allow for meaningful and informed negotiation of the Total Settlement Amount. Ex. 1, Josephson Dec., ¶¶ 15-16. The Settlement Agreement reached resolves the claims made by the Settlement Class in this lawsuit against Defendant for the time period June 14, 2019 and December 31, 2022. The Parties now desire to settle, fully and finally, the claims asserted in the instant Action. The Settlement Agreement resolves the claims of Plaintiff and the opt-in plaintiffs in addition to the Rule 23 class members. Without the settlement, the case would continue to be hotly contested and would almost assuredly proceed to trial, where there is no guarantee for either party as to the outcome. Thus, the Parties believe this settlement is fair and reasonable. By this Motion, Plaintiff seeks, and Defendant does not oppose, final Court approval of the Settlement Agreement.

**3. NOTICE OF SETTLEMENT, RESPONSE OF CLASS MEMBERS, AND THE OPT-IN PROCESS.**

Following the Court's preliminary approval Order (Dkt. No. 158), the Settlement Administrator, ILYM Group, Inc. ("ILYM") received the Class and Collective Data from Defendant, which contained the names, last known mailing addresses, telephone numbers, social security numbers, and calculated damages for the Class Members. Ex. 1, Josephson Decl., at ¶ 30; Ex. 2, Settlement Administrator Decl. at ¶ 4. On March 13, 2026, ILYM disseminated the Class and Collective Notice Packets via First Class U.S. Mail. Ex. 1 at ¶ 31; Ex. 2 at ¶ 6.

3

The notices informed the Class Members of the Settlement terms; their expected share of their allocation; the deadline to submit any objections; the final approval hearing; the names and contact information for Class Counsel; and that Jackson would seek attorneys' fees, costs, and Plaintiff 's service award and the corresponding amounts. *Id.*; *see also* ECF No. 156-2.

As of May 7, 2026, seven notice packets have been returned to ILYM as undeliverable without a forwarding address, and for which skip-tracing was used to re-mail the notices. Ex. 1, Josephson Decl., at ¶ 33; Ex. 2, Settlement Administrator Decl., at ¶ 6. After re-mailing the notices, zero notice packets remained undeliverable. *Id.* The deadline for Class Members to opt-in, seek exclusion, object, and/or dispute their settlement share calculation expired on April 27, 2026. Ex. 1 at ¶ 34; Ex. 2 at ¶ 7. To date, no objections or disputes have been filed and only one Class member requested exclusion from the Settlement. Ex. 1 at ¶ 35; Ex. 2 at ¶¶ 7-9.

In addition to distributing the Notice Packets, ILYM is also responsible for calculating individual settlement payments; calculating applicable payroll taxes, withholdings and deductions; preparing and issuing settlement disbursements to Participating Class members, the Class Representatives, Class Counsel, and federal and local tax authorities; and handling inquiries and/or disputes from Class Members. *Id*. ILYM is also responsible for the timely preparation and filing of tax reporting. *Id.* Following final approval of the Settlement, ILYM will issue checks to the Opt-in Plaintiffs and Class Members. *Id*.

### 4. ARGUMENT & AUTHORITIES

#### A.    The Best Practicable Notice was Provided to the Class members.

Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all member who can be identified through reasonable effort." Notice of a class action settlement is adequate where the notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of

the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). Put another way, "Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 946 (cleaned up). Under the circumstances of this case, where all class members were known in advance, the direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—is the best practicable notice. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014).

Pursuant to the Court's February 22, 2026, preliminary approval order, ILYM sent the Court-approved Class and Collective Notice Packet to the Class members in accordance with the terms of the Settlement. *See* Ex. 1, Josephson Decl. at ¶¶ 30-33; Ex. 2, Settlement Administrator Decl., at ¶¶ 4-6. The notice process was robust, with all notices sent via U.S. First Class Mail. Ex. 1, at ¶ 31; Ex. 2, at ¶ 6. The Settlement Administrator followed all procedures set forth in the Court-approved notice plan. Ex. 2. Reasonable steps have been taken to ensure that all Class Members received the Notice. Ex. 2 at ¶ 6. Ultimately, of the 120 notice packets mailed out, 7 were returned. *Id.* Of those 7 returned notice packets, all were re-mailed to forwarding addresses or to addresses identified by a skip-trace procedure. *Id.* In total, none of the notice packets remained undeliverable. *See* Ex. 1, Josephson Decl., at ¶ 33; Ex. 2 at ¶ 6. The Notice Period has since closed, and only a single Class Member chose to opt out of the Settlement. Ex. 1 at ¶ 35; Ex. 2 at ¶ 6. The notices provided reasonable estimates of Class Members' recovery, in addition to considerable information about the case and the Settlement. Ex. 1 at ¶ 31; Ex. 2-A. Accordingly, the notice process was effective and satisfies the "best practicable notice" standard.

### B.    The Settlement Warrants Final Approval.

Here, the Court has already granted preliminary approval of the Settlement. *See* ECF No. 158. As part of that order, the Court conditionally certified the Class and Collective for settlement purposes, finding the requirements of Rule 23 and the FLSA were met. *Id.* at 1-2. Accordingly, the only step that remains is final approval of the Settlement, which should be granted pursuant to Fourth Circuit case law and numerous decisions throughout federal district courts.

A certified class action may not be settled without Court Approval. *See* Fed. R. Civ. P. 23(e); *Boger v. Citrix Sys., Inc.*, No. 19-CV-01234-LKG, 2023 WL 3763974, at *5 (D. Md. June 1, 2023). Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 767 (D. Md. 2022). The primary concern addressed by this requirement is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020). Here, the Parties' Settlement agreement satisfies each of the Fourth Circuit's standards for final approval purposes.

#### 1.  *The Proposed Settlement is Fair.*

In determining a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614

6

(4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159); *see also Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC 11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (citations and quotations omitted) ("The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement").

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the Parties conducted full litigation discovery, briefed conditional certification, class certification, and summary judgment, engaged in a protracted arms-length negotiation, followed by two mediations, which were informed by time and pay data furnished by Defendant.

### i.    Posture of the Case

As the docket confirms, this litigation has been hotly contested since 2022, and the Parties did not reach resolution until nearly the eve of trial. Indeed, the Parties have engaged in and completed written discovery and depositions of key current and former AMEWAS personnel.  The Parties also had numerous discovery disputes which required Court intervention. Plaintiff moved for class and collective certification. Both Parties moved for summary judgment a process which allowed both sides to narrow the outstanding issues for trial—including whether Defendant's January 2023 changes to its pay practices mitigated the violations which led to the lawsuit in the first place.

Prior to mediation and during discovery, Plaintiff created a comprehensive damages model using the time and pay data provided by Defendant.  Both Parties used this model at mediation to negotiate a fair settlement. At mediation, the Parties were able to reach resolution and finalize the core settlement terms. The Parties then worked collaboratively to draft the comprehensive

Settlement Agreement now presented for this Court's review and approval. Had the Parties not reached resolution, and had this action continued to trial, significant additional resources would have been expended.. The posture of the case at the time of resolution suggests the proposed settlement is the product of good-faith, arm's length bargaining without collusion.

ii.    <u>Extent of Discovery</u>

The Parties conducted formal litigation discovery throughout and until the conclusion of the designated discovery period. Defendant provided necessary data for the construction of Plaintiff's damages model.  Such data related to hours worked, types of pay received, and potential damages. In addition to the formal discovery exchanged between the Parties, Class Counsel also conferred with the Named Plaintiff and other Settlement Class Members in this matter. These conversations further corroborated the information received from Defendant and allowed Class Counsel to meaningfully negotiate on behalf of the Settlement Class Members.

Formal discovery in this case was more than sufficient such that both Parties understood the relevant facts and legal issues impacting the case. This formal discovery included the production of pay records, timesheets, corporate policies, and deposition testimony from key witnesses. This information allowed both parties to adequately assess the respective benefits of settlement and potential risks of continued litigation and trial.

In addition, Class Counsel committed substantial resources to investigating, analyzing, and valuating the claims of the putative class. The proposed settlement calculations are based on the pay and time data Defendant provided in discovery on behalf of the Settlement Class Members, supporting the fairness of the overall proposed settlement. The extent of discovery and information exchanged at the time of resolution reflects a fair and reasonable settlement reached without collusion.

8

### iii. Circumstances Surrounding the Negotiations

Only after years of informed and contested litigation were the Parties able to make any progress towards settlement. The negotiations that resulted in this settlement were years in the making, conducted at arms' length before an experienced wage and hour mediator and necessitating two mediation sessions to reach resolution. Ex. 1, Josephson Dec., ¶ 17. At their mediations, the Parties worked to resolve the final terms resulting in the settlement that is now being presented to the Court. The Parties have continued to work together to fully finalize the Settlement Agreement before this Court. The Parties exchanged drafts of the Settlement Agreement and worked to resolve settlement issues as they arose during the drafting process. The circumstances surrounding the negotiations that gave rise to the instant settlement are reflective of good-faith, arm's length bargaining without collusion.

### iv. Experience of Counsel

Here, the experience levels of counsel for Plaintiff and Defendant indicate a resolution reached because of good-faith, arm's length bargaining without collusion. Class Counsel are experienced litigators who have devoted their practice to representing employees in wage and hour litigation. *See generally* ECF No. 66-1 at 29-30; *see also* ECF No. 66-25; Ex. 1, Josephson Dec., ¶¶ 4-7. Likewise, Defendant's Counsel is a seasoned attorney who is very experienced in wage and hour litigation and represents employers and employees across Maryland and other states. Both sides were well-represented in this matter.

An examination of the four fairness factors clearly demonstrates this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining. Therefore, this proposed settlement should be approved as fair.

9

### 2. *The Proposed Settlement is Adequate.*

Likewise, the adequacy factors favor final approval of the proposed settlement. In assessing the adequacy of a proposed settlement, the Court must consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The focus of the adequacy prong is "the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citations and quotations omitted).

i.      Strength of Plaintiff's Case on the Merits; Difficulties of Proof and Defenses

Plaintiff has asserted that he and similarly situated employees were misclassified as exempt because their pay plan (at least prior to January 2023) did not meet the salary basis requirements of the FLSA or Maryland wage and hour laws. Plaintiff alleged that the pay practice of paying straight time for overtime resulted in the Settlement Class Members underpayment of their overtime wages. Plaintiff filed this lawsuit to recover the unpaid half-time due to the workers. Defendant denies Plaintiff's allegations and asserts that Settlement Class Members were properly classified as exempt, were paid on a salary basis and were not entitled to overtime compensation. Defendant also claimed that it acted in good faith and that a bona fide dispute existed regarding the legality of its pay practices. Ultimately, liability would likely turn on whether Defendant could

meet the salary basis and if not, whether its conduct would rise to the level of bad faith under the applicable standards.

Plaintiff believes that liability would have been found on these issues, and Defendant believes the opposite. That said, each party sought summary judgment based on its respective position (ECF Nos. 110, 114), but despite the Parties marshalling and presenting all available evidence on these issues, the Court found that fact issues exist and neither party prevailed on summary judgment. ECF No. 131. A jury verdict could go either way and could potentially result in no recovery at all for Plaintiff and the Settlement Class Members. These uncertainties weigh in favor of the reasonableness and certainty of the proposed settlement. The Settlement Agreement provides substantial compensation for Plaintiff and Settlement Class Members' claims, certainty of payment and negates the risk of a bad result for either Party.

ii.    Duration and Expense of Additional Litigation

This case has already spanned more than three (3) years and the issues have been adequately briefed. Should this litigation proceed to trial, trial of this action would potentially cost each side tens of thousands of dollars in additional attorneys' fees and costs. Therefore, this factor also supports the adequacy of the proposed settlement.

iii.  Solvency of Defendant and Likelihood of Recovery

The fourth adequacy factor, Defendant's financial solvency, does not bear significantly either way in considering the adequacy of the settlement. Here, Defendant is a family-owned company, all insurance has been exhausted, and any judgment and/or settlement will be paid by the owners personally. Defendant has agreed to pay now to resolve the pending litigation and is presently capable of funding the settlement payments according to the deadlines set forth herein.

11

This proposed settlement provides compensation and a level of certainty for the Settlement Class—now, not several months or years into the future.

### iv.  Degree of Opposition to the Settlement

The degree of opposition to the Settlement further weighs in favor of approval. Notice of the Settlement was disseminated on March 13, 2026. Ex. 1, Josephson Decl., at ¶ 31; Ex. 2, Settlement Administrator Decl., at ¶ 6; Ex. 2-A. The deadline for the Class Members to opt out, object, and/or dispute their reported total workweeks expired on April 27, 2026. Ex. 1 at 34; Ex. 2 at ¶ 7. As of the time of filing, zero Class Members have objected to the Settlement terms, and only one Class Member (or .008% of the Class) requested exclusion from the Class. Ex. 1 at ¶ 35; Ex. 2 at ¶ 7. This is an overwhelmingly positive reaction to the Settlement, and weighs in favor of final approval.

### 3.  *The Proposed Settlement is Reasonable.*

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022); *see also Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022). But, the Fourth Circuit has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Banner Life Ins. Co.*, 28 F.4th at 527 (quoting *Sharp Farms*, 917 F.3d at 303–04). The Fourth Circuit has "never required [ ] an estimate" of what the class members would have received had they prevailed at trial. *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022).

Here, Plaintiff calculated approximately $263,980.01 in unpaid overtime across the relevant time period. Ex. 1, Josephson Dec., ¶ 16. The gross settlement amount of $450,000.00 represents approximately 170% of the unpaid overtime calculated as due to the Settlement Class

for the time period of June 2019 through December 31, 2022. *Id*. at ¶ 19. There can be no doubt that this is an excellent recovery for the Class Members. Moreover, the net settlement amount for distribution to the Settlement Class, $194,000.00, represents 73% of the amount of unpaid back wages. *Id*. This is well within the range of approved class and collective actions. *Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377, 396 (M.D.N.C. 2024) (class settlement approved as adequate and reasonable where recovery under the settlement represented 27% of likely damages); *Strother v. OS Rest. Servs., LLC*, No. 8:22-CV-0845-AAQ, 2023 WL 1769733, at *4 (D. Md. Feb. 3, 2023)(approving as reasonable a wage and hour settlement where Plaintiff's recovery was equivalent to 30% of Plaintiff's claimed damages, and noting that Courts have approved wage and hour settlements where plaintiffs received 14%-20% of claimed backpay).

### C.       The Court Should Finally Approve the Parties' FLSA Settlement.

To approve an FLSA settlement, the court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Fonseka v. Alfredhouse Eldercare, Inc.*, No. GHJ-14-3498, 2015 WL 3863068, at *2 (D. Md. June 19, 2015). To do this, "courts examine whether there are FLSA issues actually in dispute, the fairness and reasonableness of the settlement, and the reasonableness of the attorney's fees." *Id*.  Here, a bona fide dispute existed, the proposed settlement is fair and reasonable, and the requested attorney's fees are appropriate; the Court should finally approve the FLSA settlement.

#### 1.   *A Bona Fide Dispute Existed.*

In determining whether a bona fide dispute over FLSA liability exists, the Court reviews the pleadings, any subsequent court filings, and the parties' recitals in the proposed settlement. *Curtis*, 2022 WL 1062024 at *8. Here, as discussed *supra* in reference to the procedural history and posture of this case, the record is rife with evidence that a bona fide dispute existed between the parties. The parties have litigated the propriety of the collective members' exempt

13

classification and entitlement to overtime for more than three years. Moreover, both parties filed dispositive motions setting forth their respective positions on the central issues of the action. ECF Nos. 110, 114. There can be no doubt that this action involved a bona fide dispute over FLSA liability.

### 2. The Settlement is Fair and Reasonable.

"In determining whether a settlement is fair and reasonable, the Court considers the extent of discovery, the stage of the proceedings, the complexity, expense, and likely duration of the litigation, the experience of counsel, and the absence of fraud or collusion." *Curtis*, 2022 WL 1062024 at *8. These factors mirror those that the Court considers in making its fairness evaluation of a proposed settlement under Rule 23. As discussed *supra*, consideration of these factors supports approval of the proposed settlement as fair and reasonable.

In assessing an FLSA settlement, the Court can also consider the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Graham* 2022 WL 3586492, at *5; *Strother* 2023 WL 1769733, at *4. As discussed *supra*, here, the gross settlement amount represents 170% of the unpaid overtime at issue, and the net settlement amount for distribution represents 73% of the unpaid overtime at issue. Ex. 1, Josephson Dec., at ¶ 19. A recovery percentage representing 73% of unpaid wages considerably exceeds the amount of recovery routinely approved as fair and reasonable in FLSA settlements in this District. *See e.g. Graham* 2022 WL 3586492, at *7 (46.1%); *Strother* 2023 WL 1769733, at *4 (14%-30%); *Rineholt*, 2024 WL 1243844, at *4 (14%-20%). Moreover, as discussed *infra*, the requested attorneys' fees are reasonable and support approval. The Court should approve the FLSA settlement.

14

**D.      The Requested Attorneys' Fees, Costs, and Service Award Should Be Finally Approved.**

Where the Parties have reached an agreement as to attorneys' fees as part of a settlement, "the Court still retains a duty to assess the reasonableness of the award." *Alloways v. Cruise Web, Inc.*, No. CV CBD-17-2811, 2019 WL 1902813, at *10 (D. Md. Apr. 29, 2019). A reasonableness assessment for attorney's fees begins with the lodestar method. *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). This involves determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986, at *12 (D. Md. July 22, 2013). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 890 n.11 (1984). *See also* Loc. R. App. B (3).

Here, Plaintiff's Counsel's lodestar reflects more than 900 hours devoted to this case over a period of approximately three years and seven months. Ex. 1, Josephson Dec., ¶¶ 24-27.[1] The total lodestar value of the time devoted and attorneys' fees incurred for this action exceeds $480,000.00. *Id*.  Despite this, Plaintiff's Counsel is only seeking attorneys' fees in the amount of $200,000.00 – less than half the lodestar value. Indeed, dividing $200,000.00 by 900 hours results in an average hourly rate of $222.22. *Id*.

Here, there were two primary attorneys devoted to this action: Michael Josephson (a 26-year lawyer, licensed in 2000), who devoted approximately 176.10 hours to the action and Alyssa White (a 15-year lawyer, licensed in 2011), who devoted approximately 408.90 hours to the action. *Id*., ¶¶ 4, 7, 24-27. Combined, Josephson and White devoted a total of 585 hours to this action. *Id*.,

---

[1] This does not include Class Counsel's additional time spent in facilitating Settlement Administration and preparing the Parties' final approval documents.

¶¶ 24-27. According to the Fitzpatrick Matrix cited in the Maryland Local Rules (Loc. R. App. B), a reasonable hourly rate for a 26-year lawyer in 2025 would be $897.00, and a reasonable hourly rate for a 15-year lawyer in 2025 would be $795.00. *See* https://www.mdd.uscourts.gov/sites/mdd/files/fitzpatrick-matrix.pdf (last visited January 20, 2026). In contrast, Josephson's customary hourly rate is $800.00, and White's customary hourly rate is $500.00 – rates considerably lower than those established by the Fitzpatrick Matrix. Ex. 1, Josephson Dec., ¶¶ 24-27. Here, the fee award sought – representing an average hourly rate of a mere $222.22 for 900 hours expended, or, viewed another way, representing an average hourly rate of a mere $341.88 for just the 585 attorney hours expended by Josephson and White (and discounting the entirety of the remaining 315 hours Josephson Dunlap LLP devoted to this action) – signifies an enormous discount to Plaintiff's Counsel's hourly rates, constitutes a mere fraction of the Fitzpatrick Matrix hourly rates, and is presumptively reasonable. *Id*. The requested fee should be approved.

Plaintiff is also entitled to reimbursement of costs in this action. "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." *Kabore v. Anchor Staffing, Inc.,* No. L–10–3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012). The Fourth Circuit has stated that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988) (internal quotations omitted). Examples of costs that have been charged include necessary travel, depositions and transcripts, computer research, postage, court costs, photocopying, expert fees, and mediation fees. *Almendarez v. J.T.T. Enters.*

16

*Corp.,* No. JKS 06–68, 2010 WL 3385362, at *7 (D.Md. Aug. 25, 2010); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 468 (D. Md. 2014).

Here, Plaintiff's Counsel seeks reimbursement of litigation expenses up to $40,000.00. ECF No. 156 at 3. The vast majority of the costs Counsel incurred in pursuit of this action are associated with deposition-related expenses (witness fees, transcripts, court-reporters, videos), with costs for third-party expert analysis of the data and damage calculations), and with attendance at two mediations. Ex. 1, Josephson Dec. at ¶ 22. These costs were reasonably incurred and are of the type typically approved for reimbursement. *Almendarez v. J.T.T. Enters. Corp.,* 2010 WL 3385362, at *7; *see also CASA de Maryland, Inc. v. Arbor Realty Tr., Inc.*, No. CV DKC 21-1778, 2024 WL 1051120, at *9 (D. Md. Mar. 11, 2024); *Boyd*, 299 F.R.D. at 468. Accordingly, the Court should approve reimbursement of said costs here.

Further, the Court should finally approve the requested Representative Enhancement Payment (or service award) to Jackson in the amount of $10,000.00. As part of a class action settlement, named plaintiffs are eligible for reasonable incentive payments, and incentive payments are often awarded in Rule 23 class actions. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014) (internal citations omitted); *CASA de Maryland*, 2024 WL 1051120, at *11. To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Decohen* 299 F.R.D. at 483 (internal citations omitted). Here, Jackson has been engaged in and involved with this litigation since prior to June 2022, when he initiated the same, for a total period of time spanning nearly four years. Ex. 1, Josephson Dec., ¶ 29. Jackson has provided invaluable assistance to Class Counsel. *Id*. Jackson's contributions to this action include providing

17

critical information during repeated interviews and consultation with counsel to inform the investigation into his claims, gathering and providing documents, responding to discovery, preparing for deposition, sitting for deposition, and providing declarations. *Id.* Jackson further made himself available to counsel whenever he was needed. *Id.* Jackson also consulted with counsel regarding critical aspects of the settlement. *Id.* Moreover, in initiating this action, Jackson was instrumental in bringing about the ultimate result wherein a favorable, substantial and fair settlement was achieved for all class and collective members. *Id.* Furthermore, in bringing this action Jackson assumed the risk of potential challenges to his current position or future job prospects as a result of his participation in this lawsuit. *Graham v. Famous Dave's of Am., Inc.*, No. CV DKC 19-0486, 2022 WL 17584274, at *13 (D. Md. Dec. 12, 2022).

In light of his contributions and the attendant risks, the Representative Enhancement Payment to Jackson should be finally approved. The requested $10,000 payment is in line with other service awards approved in class settlements and FLSA settlements. *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 774 (D. Md. 2022)(approving service awards of $15,000, $12,500, and $10,000 to class representatives); *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *7–8 (D. Md. Jan. 28, 2020)(approving service awards of $20,000 to each class representative); *Scott v. Fam. Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2018 WL 1321048, at *5 (W.D.N.C. Mar. 14, 2018) (approving service awards of $10,000 each for the nine named Class Representatives); *Decohen*, 299 F.R.D. at 483 (awarding requested incentive payment of $10,000 to named plaintiff in class action settlement); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507–08 (M.D.N.C. 2018)(approving $10,000 service award payment to named plaintiff in FLSA settlement); *Leigh v. Bottling Grp., LLC*, No.

18

CIV.A. DKC 10-0218, 2012 WL 460468, at *7 (D. Md. Feb. 10, 2012)(approving $9,000 service award to named plaintiff in FLSA settlement).

**E.      The Settlement Administrator's Costs Should be Finally Approved.**

Finally, the Court should finally approve the Settlement Administrator's costs in administering this Settlement. The Settlement Agreement provides that the Settlement Administrator's costs will be paid out of the common fund. ECF No. 156 at 3-4.

As stated *supra*, the Court preliminarily approved ILYM Group as the Parties' Settlement Administrator. ECF No. 158 at 2. On February 23, 2026, ILYM received the class data for the 120 putative class members. Ex. 2, Settlement Administrator Decl., at ¶ 4. On March 23, 2026, ILYM disseminated notice via First Class U.S. Mail. *Id.* at ¶ 6. Of the 120 Notices sent, 7 were returned undeliverable. *Id.* ILYM performed skip-tracing functions to each of the 7 returned Notice Packets to find the most up-to-date addresses for each returned Notice Packet. *Id.* ILYM re-mailed all 7 of the returned Notice Packets. *Id.* Zero Notice Packets were returned a second time, and none have been deemed undeliverable. *Id.* ILYM is also responsible for resolving settlement pay disputes, administering and making payments from the Common Fund, distributing settlement payments and withholding applicable payroll taxes, and calculating settlement allocations for each Settlement Class Member. ECF No. 156 at 3.

ILYM's anticipated fees and costs for the completion of the settlement administration are $5,250. *Id.* at ¶ 10. As provided in the Settlement Agreement, ILYM is entitled to its costs in administering the Settlement. ECF No. 156 at 3-4. Thus, Plaintiff respectfully requests the Court finally approve ILYM's costs in the amount of $5,250. *Smock v. Meridian Senior Living, LLC*, No. CV DKC 23-1154, 2024 WL 5075212, at *2 (D. Md. Dec. 11, 2024) (approving $13,000 in settlement administration costs in a $200,000 settlement).

19

**5.  CONCLUSION**

Wherefore, Plaintiff asks the Court grant his Motion and enter the Proposed Order (attached hereto as Exhibit 3): (1) Granting final approval of the Settlement Agreement; (2) Finally certifying the Collective and Class for settlement purposes; (3) Finally appointing and approving Plaintiff Jackson as Class representative; (4) Finally appointing and approving Josephson Dunlap LLC, Brucker Burch PLLC, and Migliaccio & Rathod LLP as Class Counsel; (5) Finally approving the requested attorneys' fees and costs as described in the Settlement Agreement; (6) Finally approving the requested service award to Plaintiff as described in the Settlement Agreement; (7) Finally approving the Settlement Administration Costs; (8) Finally approving the release of claims as set forth in the Settlement Agreement; and (9) Dismissing this lawsuit and Jackson's claims with prejudice.

Respectfully submitted,                    **JOSEPHSON DUNLAP, LLP**

By: /s/ *Alyssa J. White*
**Michael A. Josephson**
TX Bar No. 24014780
(*Admitted Pro Hac Vice*)
**Andrew W. Dunlap**
TX Bar No. 24078444
**Alyssa J. White**
TX Bar No. 24073014
(*Admitted Pro Hac Vice*)
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**

20

11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Nicholas A. Migliaccio**
Maryland Federal Bar No. 29077
**Jason S. Rathod**
Maryland Federal Bar No. 18424
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302,
Washington D.C. 20002
(202) 470-3520 – Telephone
(202) 800-2730 – Fax
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

**ATTORNEYS FOR PLAINTIFF**

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2026, I electronically filed the foregoing document with the clerk of the court using the electronic case filing system which will send notice of the same to all counsel of record.

By: /s/ *Alyssa J. White*
Alyssa J. White